— **EXHIBIT  5** —

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*IN RE BROILER CHICKEN ANTITRUST LITIGATION*

This Document Relates to:

All Indirect Purchaser Plaintiff Actions

No. 1:16-cv-08637

Hon. Thomas Durkin

**RENEWED MOTION TO APPOINT SEPARATE INTERIM**
**CLASS COUNSEL FOR INDIRECT PURCHASER CONSUMERS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................4

III.  CONSUMERS SHOULD BE APPOINTED SEPARATE COUNSEL
      DUE TO A CURRENT CONFLICT OF INTEREST WITH RESELLERS. ....................5

      A.    A Lawyer Shall Not Represent a Client if the Representation Involves a
            Concurrent Conflict of Interest .................................................................5

      B.    An Expert in Attorney Ethics Finds An Impermissible Conflict of
            Interest in the Joint Representation of Resellers and Consumers in
            This Case ....................................................................................................6

      C.    The Conflict Has Already Manifested Itself. ...........................................7

      D.    The Conflict Will Continue Throughout the Litigation ...........................11

            1.    Pleading. ........................................................................................11

            2.    Discovery. ......................................................................................12

            3.    Class Certification. ........................................................................13

            4.    Summary Judgment and Trial. .......................................................14

IV.   CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alexander Proudfoot PLC v. Fed. Ins. Co.*,
  1994 WL 110531 (N.D. Ill. Mar. 30, 1994)................................................................6

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ....................................................................................13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ....................................................9, 10

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013)..............................................................................................13

*In re Domestic Drywall Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 90619 (E.D. Pa. July 13, 2016).........................................12

*Guillen v. City of Chicago*,
  956 F. Supp. 1416 (N.D. Ill. 1997) ......................................................................2, 6

*Harrison v. E. I. DuPont De Nemours & Co.*,
  2016 U.S. Dist. LEXIS 77465 (N.D. Cal. June 13, 2016) .................................10, 12

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008)................................................................................13, 14

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977).....................................................................................................9

*Installation Software Techs., Inc. v. Wise Solutions, Inc.*,
  2004 WL 524829 (N.D. Ill. Mar. 5, 2004)................................................................6

*Lewis v. National Football League, et al.*,
  146 F.R.D. 5 (D.D.C. 1992).......................................................................................5

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ...................................................................................13

*In re Methionine Antitrust Litig.*,
  204 F.R.D. 161 (N.D. Cal. 2001)...............................................................................7

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008)........................................................................................13

*In re Optical Disk Drive Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 15899 (N.D. Cal. Feb. 8, 2016) ....................................10, 14

*In re OSB Antitrust Litig.*,
2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) ...............................................9

*In re Parking Heaters Antitrust Litig.*,
310 F.R.D. 54 (E.D.N.Y. 2015) .................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016)......................................................................6

*In re Polyurethane Foam Antitrust Litig.*,
314 F.R.D. 226 (N.D. Ohio), *aff'd*, 2014 U.S. App. LEXIS 24707 (6th Cir. 2014) ........................................................................................................10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009).............................................................9

*Somers v. Apple, Inc.*,
258 F.R.D. 354 (N.D. Cal. 2009).............................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2012 U.S. Dist. LEXIS 21696 (N.D. Cal. Feb. 21, 2012) .......................12

## STATUTES

15 U.S.C. § 15(a) .............................................................................................7

CAL. BUS. & PROF. CODE § 16750(a)..............................................................7

## Other Authorities

Beth Winegarner, *Best Buy Loses LCD Price-Fixing Trial Against Toshiba* (Sept. 3, 2013, 8:42 PM EDT)...................................................................................8

Pierre Y. Cremieux, "Assessing Conflict, Impact, and Common Methods of Proof in Intermediate Indirect-Purchaser Class Action Litigation," Economics Committee Newsletter (ABA Spring 2006)............................................12

## I.  INTRODUCTION

Consumer Plaintiffs[1] respectfully renew their motion to appoint Steve W. Berman of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Kit A. Pierson of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as separate interim co-lead counsel (together "Consumer Counsel") for the proposed indirect purchaser consumer class ("Consumer Class" or "Consumers").  Plaintiffs bring this motion only after (1) careful review of the allegations in the newly filed Indirect Purchaser Plaintiffs' Second Amended Consolidated Class Action Complaint (2nd IPP Complaint),[2] (2) serious consideration and analysis of the conflict-of-interest rules at play, (3) recognition of a current conflict presented by the new allegations in the complaint, and (4) solicitation of an independent expert opinion on the issue. In its decision to appoint one interim co-lead counsel group ("Indirect Purchaser Counsel") to represent all Indirect Purchaser Plaintiffs, this Court noted that "Consumer end user counsel is free to re-raise the appointment issue" if and when a conflict arises between Resellers and Consumers. (10/14/16 Order, ECF No. 144, at 5).  Plaintiffs now re-raise the appointment issue because allegations in Indirect Purchasers' newly filed complaint present a current conflict of interest between Resellers and Consumers.  Indirect Purchaser Counsel object to this motion.

---

[1] Daniel M. Percy, Gloria J. Lathen, and Jonas Dimas (plaintiffs who filed the *Percy* Complaint); together with Dorothy Monahan, Frank Coe, Lester Patterson, Pamela Tierney, Linda Cheslow, and Natalie Wilbur (plaintiffs who filed the *Monahan* Complaint); and Christopher Gilbert, Alison Pauk, Marilyn Strangeland, Leslie Weidner, and David Weidner (plaintiffs who filed the *Gilbert* complaint) (collectively, the "Percy, Monahan, and Gilbert Plaintiffs" or the "Consumer Plaintiffs").

[2] The 2nd IPP Complaint was filed November 23, 2016, ECF No. 213.  The relevant allegations also appear in Indirect Purchaser Plaintiffs' first consolidated amended complaint ("IPP Complaint") filed October 28, 2016, ECF No. 179.  Indirect Purchaser Counsel filed both of these amended complaints within the last several weeks, after being appointed interim co-class and liaison counsel.

In their 2nd IPP Complaint, Indirect Purchaser Counsel lump Resellers and Consumers together and fail to make specific allegations of antitrust impact for either. As the Court knows, to prevail on their claims, plaintiffs must prove that they were harmed by defendants' conduct. Resellers want to show they were injured by paying supra-competitive prices for broiler chickens and not passing the overcharges along to consumer end users. Consumers want to show the opposite: that the overcharges were passed through to them, and that the antitrust injury was suffered by them rather than by Resellers. Attempting to represent both of these competing interests in the 2nd IPP Complaint, Indirect Purchaser Counsel split the baby and allege:

> "It is well recognized that in a multi-level chain of distribution, such as exists here, an overcharge will be felt throughout the distribution chain." "In most cases [resellers] will absorb part of these increased costs themselves and pass part along …. Every person at every stage in the chain likely will be poorer as a result of the monopoly price at the top."

(2nd IPP Complaint, ¶ 382.)[3] This allegation—that Resellers absorbed part of the overcharges— is in direct conflict with Consumers' interest in proving that 100% or more of the overcharges were passed through to them and constitute their damages in this case. This is a current conflict prohibited by Rule 1.7 of the ABA Model Rules of Professional Conduct.[4] Indirect Purchaser Counsel's expressed bias on the issue of pass-through, and the explicit claim in their complaint that some of the overcharge is absorbed by resellers and not passed through as damages to consumers, will shape discovery and the selection of experts in favor of one subclass over another. The representation of Consumers will be impermissibly limited by counsel's responsibilities to Resellers.

---

[3] *See also* IPP Complaint, ¶ 353.

[4] *See* Local Rule 83.50 (adopting the model Rules of the American Bar Association); *See also Guillen v. City of Chicago*, 956 F. Supp. 1416, 1420-21 (N.D. Ill. 1997).

Given the apparent conflict of interest, Consumer Plaintiffs sought out an independent opinion on the issue from Mary Robinson, a well-recognized expert in attorney ethics. Ms. Robinson served as the Administrator of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (ARDC) for 15 years, supervising the prosecution of hundreds of disciplinary cases involving lawyers alleged to have engaged in representations involving conflicts of interest. (*See* Declaration of Mary Robinson ("Robinson Decl.") at 1, attached as Exhibit A.) She continues to make presentations to national audiences and Illinois lawyers on professional responsibility issues. (*Id.* at 1-2.) After considering the competing burdens of proof of Resellers and Consumers in this action, Ms. Robinson concluded that a conflict exists (*id.* at 3-5):

> Representation of putative classes of indirect resellers and end-use consumers by the same class counsel in the broiler chicken antitrust litigation involves a concurrent conflict of interest as defined by Rule 1.7(a)(2). … The option of appointing separate counsel for one of the subclasses for purposes of an allocation hearing does not cure the problem. The interests of the classes diverge at several stages before that point in the representation, and counsel will, by then, already have been put to the choice of favoring the interests of one class over those of the other. [*Id.* at 5, 4.]

Given the conflict of interest, Indirect Purchaser Counsel are no longer adequate to represent the Consumer Class under FRCP 23(g). Hagens Berman and Cohen Milstein have taken the lead in investigating and pursuing the claims of Indirect Purchaser Consumers and have demonstrated their loyalty to this subclass. Further, Hagens Berman and Cohen Milstein satisfy the requirements of FRCP 23(g)[5] and have a record of tremendous success working together in

---

[5] *See* Application for Appointment of Steve W. Berman of Hagens Berman Sobol Shapiro LLP and Kit A. Pierson of Cohen Milstein Sellers & Toll PLLC as Co-Lead Counsel for the Indirect Purchaser Consumer Class, ECF No. 117 ("HB Motion") at 1-10; 10/14/16 Order, ECF No. 144, at 4.

antitrust class actions.[6] Therefore, the Consumer Plaintiffs respectfully request that the Court appoint Hagens Berman and Cohen Milstein as interim co-lead counsel for the proposed Indirect Purchaser Consumer Class.

To be clear, consumer Plaintiffs do not object to the continued representation of Indirect Purchaser Resellers by Gustafson Gluek PLLC ("Gustafson Gluek"), Cotchett Pitre & McCarthy LLP ("Cotchett Pitre"), and Wexler Wallace LLP ("Wexler Wallace").

## II.     BACKGROUND

At least 11 class-actions against defendants were filed in the Northern District of Illinois alleging a price-fixing and supply restriction conspiracy under federal and/or state antitrust laws to raise the prices of broiler chickens ("broilers"). Three cases were filed on behalf of direct purchasers, which buy broilers directly from the defendants ("Direct Purchasers"). Three cases were filed on behalf of indirect purchaser resellers, such as small grocery stores and restaurants, which purchase the broilers from distributors and resell them ("Resellers").  And five cases were filed on behalf of indirect purchaser consumers, who purchase the broilers for personal use ("Consumers" or "End Users").  Of the five cases filed on behalf of Consumers, three were filed by Hagens Berman or Cohen Milstein, and none filed by Gustafson Gluek, Cotchett Pitre, or Wexler Wallace.[7]  Indeed, after "many months of investigation and research,"[8] these three

---

[6] *See* HB Motion at 1.

[7]

| DATE FILED | ACTION | COUNSEL |
|---|---|---|
| 9/13/2016 | *Drucker v. Koch Foods, Inc., et al.*, No. 16-cv-08874 | • Wolf Haldenstein |
| 9/14/2016 | *Percy v. Koch Foods, Inc. et al.*, No. 16-cv-08931 | • Hagens Berman;<br>• Hudson Mallaney;<br>• Freydin |

firms filed their initial complaint on behalf of Resellers alone, and did not identify any claims on behalf of Consumers.[9]  In another case where Cotchett Pitre was appointed to represent both Indirect Purchaser resellers and end users, the firm chose to voluntarily dismiss the claims of end users and proceed only on behalf of Resellers.[10]  By contrast, Hagens Berman and Cohen Milstein have focused on representing the interests of Consumers in this litigation.  They have worked with economists in the industry to investigate and determine that End-User Consumers of broiler chickens are likely the most harmed among the plaintiffs because the supra-competitive prices charged by Defendants were passed through to them.

### III.  CONSUMERS SHOULD BE APPOINTED SEPARATE COUNSEL DUE TO A CURRENT CONFLICT OF INTEREST WITH RESELLERS.

#### A.  A Lawyer Shall Not Represent a Client if the Representation Involves a Concurrent Conflict of Interest

Rule 1.7(a) of the ABA Model Rules of Professional Conduct, as adopted by Local Rule 83.50, provides:

| 9/16/2016 | *Gilbert v. Tyson Foods, Inc., et al.*, No. 16-cv-09007 | • Cohen Milstein |
|---|---|---|
| 10/04/2016 | *Monahan, et al. v. Koch Foods, Inc., et al.*, No. 16-cv-09490 | • Hagens Berman |
| 10/21/2016 | *Glover v. Koch Foods, Inc., et al.*, No. 16-cv-09912 | • Wolf Haldenstein;<br>• Gainey McKenna |

[8] Motion for Appointment of Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy LLP as Interim Class Counsel and Wexler Wallace LLP as Liason counsel for Indirect Purchaser Plaintiffs, ECF No. 116 ("GG Motion"), at 6.

[9] *See Fargo Stopping Ctr., LLC v. Koch Foods, Inc., et al.*, No. 16-cv-08851.

[10] *See* Notice of Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), *In re Capacitors Antitrust Litig.*, No. 14-C-03264 (N.D. Cal.) (ECF No. 594), attached as Exhibit B.  Courts have held that counsel's willingness to abandon certain class members with which it has a conflict constitutes "an explicit demonstration of a lack of the necessary loyalty" to class members.  *Lewis v. National Football League, et al.*, 146 F.R.D. 5, 11-12 (D.D.C. 1992).

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client….

In other words, if representation of Consumers in this case risks materially limiting Indirect Purchaser Counsel's responsibilities to Resellers, the representation runs afoul of the ethics rules. Rule 1.7 exists to ensure "that clients receive the undivided loyalty of their counsel."[11] The duty to avoid conflicts is serious. The Second Circuit recently vacated class certification and reversed approval of a $7.25 billion settlement due to a conflict in class counsel's representation of classes with competing interests. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*[12] "[U]nitary representation of these plaintiffs was inadequate" under Rule 23(a)(4) and due process because one class was incentivized to maximize cash for past harm and the other to maximize restraints to prevent future harm.[13]

## B. An Expert in Attorney Ethics Finds An Impermissible Conflict of Interest in the Joint Representation of Resellers and Consumers in This Case

Recognized legal ethicist Mary Robinson concludes that joint representation of Resellers and Consumers in this case involves a concurrent conflict of interest under Rule 1.7(a)(2) primarily because "[c]ounsel's representation of one of the subclasses for purposes of pleading, developing evidence, and undertaking to prove injury will be materially limited by counsel's

---

[11] *Guillen*, 956 F. Supp. at 1421; *see also*, *Installation Software Techs., Inc. v. Wise Solutions, Inc.*, 2004 WL 524829, at *3 (N.D. Ill. Mar. 5, 2004) (Coar, J.); *Alexander Proudfoot PLC v. Fed. Ins. Co*., 1994 WL 110531, at *3 (N.D. Ill. Mar. 30, 1994) ("One of the animating objectives of Rule 1.7 . . . is to ensure that attorneys provide their clients with undivided loyalty.").

[12] 827 F.3d 223 (2d Cir. 2016).

[13] *Id.* at 233.

responsibilities to the other class to plead and prove opposite conclusions." (Exhibit A, Robinson Decl. at 6.) In her declaration, Ms. Robinson highlights areas of current conflict:

> On the essential element of injury, the law firm's ability to consider and carry out its responsibilities to indirect resellers 1) to plead that the class did not pass through overcharges, 2) to conduct fact discovery that will produce data supporting that assertion, 3) to retain experts to opine that data shows that overcharges were not passed through, 4) to persuade that the class should be certified because indirect resellers can prove that on a class-wide basis, they did not pass through overcharges, and 5) to then undertake to actually prove that overcharges were not passed through will necessarily be materially limited by the firm's responsibilities to end-use consumers to do just the opposite – 1) to plead that overcharges *were* passed through, 2) to obtain the financial records of the indirect resellers and comb them for data showing that overcharges were passed through, 3) to find experts who will analyze the data and propose a measure showing pass-through of overcharges on a class-wide basis, 4) to seek class certification by persuading that the consumers can show class-wide injury because overcharges were passed through, and 5) to then undertake to prove that overcharges were indeed passed through.
>
> The option of appointing separate counsel for one of the subclasses for purposes of an allocation hearing does not cure the problem. The interests of the classes diverge at several stages before that point in the representation, and counsel will, by then, already have been put to the choice of favoring the interests of one class over those of the other. [*Id.* at 4.]

## C.     The Conflict Has Already Manifested Itself.

As Ms. Robinson points out, to prevail in their action for damages under the antitrust laws, Indirect Purchaser Plaintiffs must do more than prove Defendants conspired to raise the prices of broiler chickens. They must further establish the existence of "injury" to their business or property, also referred to as "impact" or "fact of damage." *In re Methionine Antitrust Litig.,* 204 F.R.D. 161, 164 (N.D. Cal. 2001). "Injury" is an essential element of a price-fixing claim under state as well as federal law.[14] To allege and prove injury, Consumers must show that the overcharges were passed through to them—that they were injured by paying supra-competitive

---

[14] *See, e.g.,* CAL. BUS. & PROF. CODE § 16750(a) (a cause of action may be brought by any person "who is injured" by an antitrust violation); 15 U.S.C. § 15(a).

prices for broilers. Conversely, Resellers must allege and prove that they were injured by the overcharges because they were not able to pass through the overcharges to End Users. This is a present conflict of interest at the pleading and discovery stage. If, down the road, the evidence shows that both Resellers and Consumers were injured, the conflict of interest will persist at the expert analysis, class certification, and damages stage. Consumers will want to maximize their damages by proving that nearly 100% of the overcharges were passed through to them. Resellers will want to show that they absorbed most of the overcharges and passed through very little.

The case-law addressing Indirect Purchaser claims shows the conflict between resellers and consumers playing out as Ms. Robinson opined. The competing interests are reflected in excerpts from a PowerPoint presentation submitted by a defendant's expert in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827 (N.D. Cal.). In *TFT-LCD*, the retailer Best Buy alleged Toshiba participated in a conspiracy to fix prices on liquid crystal display panels. Best Buy's experts estimated that Toshiba and one other LCD manufacturer owed the electronics retailer up to $770 million for selling it products that contained the price-fixed panels, which it then resold to customers.[15] Toshiba's experts, however, testified that even had it engaged in the conspiracy, Best Buy was not damaged, because Best Buy, on average, passed through 100% (and sometimes more) of the overcharge to consumers.[16] Thus, although the jury found that Best Buy was harmed, the jury awarded Best Buy just $7.5 million in damages.[17] In this example, it would have been impossible for counsel representing Best Buy to also represent consumers.

---

[15] Beth Winegarner, *Best Buy Loses LCD Price-Fixing Trial Against Toshiba* (Sept. 3, 2013, 8:42 PM EDT), http://www.law360.com/articles/469722/best-buy-loses-lcd-price-fixing-trial-against-toshiba (last visited Oct. 7, 2016), attached as Exhibit C.

[16] Exhibit D, attached, at 7.

[17] Beth Winegarner, *Best Buy Loses LCD Price-Fixing Trial Against Toshiba*, Exhibit C.

In *In re OSB Antitrust Litigation*, the court held that reseller plaintiffs were inadequate to represent end-user plaintiffs because of contradictions in their testimony regarding pass through. 2007 WL 2253425, at *5 (E.D. Pa. Aug. 3, 2007). "[T]he gravamen of [end-user] Plaintiffs' theory of economic injury and causation [was] that OSB resellers throughout the chain of distribution passed through 100% of Defendants' OSB price increases." *Id.* Yet resellers testified that they did ***not*** pass through price increases to end users. The court disqualified these resellers from representing the end-user plaintiffs because their testimony "directly contradict[ed] a critical class allegation." *Id.*[18] Resellers' impact and damage claims are dependent on minimizing the amount of pass through, whereas Consumers want to maximize pass through (at or above 100%).

It has been long recognized in economics and the law that consumers are the parties who ultimately get stuck suffering the damages from an antitrust overcharge that occurs at the top of the distribution chain. As Justice Brennan stated in dissent in Illinois Brick:

> The Court today regrettably weakens the effectiveness of the private treble-damages action as a deterrent to antitrust violations by, in most cases, precluding consumers from recovering for antitrust injuries. For in many instances, consumers, although indirect purchasers, bear the brunt of antitrust violations.

*Illinois Brick Co. v. Illinois*, 431 U.S. 720, 764 (1977). Cases brought under state law *Illinois Brick* "repealer statutes" have consistently showed Justice Brennan to be correct.

- During class certification and Daubert proceedings in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, an expert economist "found a 103 percent pass-through rate on sales to end-users." 264 F.R.D. 603, 614 (N.D. Cal. 2009).

- During class certification and Daubert proceedings in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, an expert economist concluded based on 47 models that, for end

---

[18] *But see In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54, 58-59 (E.D.N.Y. 2015) (appointing interim lead counsel to represent all indirect purchasers, finding that "the record does not yet establish that any actual conflict exists" between resellers and end-users).

customers, "the pass-through rate down the distribution channel is at least 100 percent of the cartel's overcharge." 2013 WL 5391159, at *4 (N.D. Cal. Sept. 24, 2013).

- During class certification proceedings in *In re Optical Disk Drive Antitrust Litig.*, an expert economist opined, based on an empirical study of the market, that "the pass-through rate was 100 percent or greater at all price points" from retailers to consumers. 2016 U.S. Dist. LEXIS 15899, at *63-64 (N.D. Cal. Feb. 8, 2016). The court held that "plaintiffs have proffered evidence that in competitive markets, economic theory (supported by empirical studies) consistently predicts that pass-through rates will be at or near 100%." *Id.* at 63.

- Denying a Rule 12(b)(1) motion, the court in *Harrison v. E. I. DuPont De Nemours & Co.* found that actual prices and "economic theory indicates [overcharge to paint companies] will lead to a near one hundred percent pass-through rate of cost increases" for end-user class that purchased paint "for personal use." 2016 U.S. Dist. LEXIS 77465, at *10 (N.D. Cal. June 13, 2016).

- During class certification proceedings in *In re Polyurethane Foam Antitrust Litig.*, regressions showed that direct purchasers passed on to retailers "124 percent" of the increase in costs, but retailers passed on "148 percent" of that increase to end users and thus were not impacted. 314 F.R.D. 226, 281 (N.D. Ohio), *aff'd*, 2014 U.S. App. LEXIS 24707 (6th Cir. 2014).

Consumers in our case could make a strong argument that 100% of more of the overcharges on broiler chickens were passed through to them. But Indirect Purchaser Counsel's representation of Resellers restrains them from making this argument. Indeed, in their second amended complaint on behalf of Resellers and Consumers, Indirect Purchaser Counsel instead allege that overcharges "will be felt throughout the distribution chain," with resellers "[absorbing] part of these increased costs themselves."[19]

In support of their Motion for Appointment as Interim Class Counsel, Indirect Purchaser Counsel referenced their success representing all indirect purchasers in the DRAM litigation.[20] But it is not clear that this was a success for end users of DRAM. In that case, counsel resolved the conflict between indirect purchaser resellers and end-users by crafting "a pro rata plan of

---

[19] 2nd IPP Complaint, ¶ 382; *see also* IPP Complaint, ¶ 353.

[20] GG Motion at 14.

distribution"[21] in which "the claims of all resellers, end-buyer business and households will be treated *the same* for purposes of computing pro rata shares of the settlement fund."[22]  If 100% of overcharges were actually passed through to end users, then a pro rata distribution among resellers and end-users was contrary to the best interest of end-users.  Instead of recovering the overcharge that was actually passed through to them, they would have recovered only a fraction of their actual overcharge. While this may have the superficial appeal of "equality," forcing the party that actually incurred the overcharge to forfeit those damages and instead share them with a reseller that passed through the overcharge is unsound as a matter of both economics and fairness.  While the Resellers may have a different view and have an economic interest in claiming that they absorbed an "equal" (or greater) share of the overcharge, Consumers are entitled to counsel loyal to them and able to engage an expert to prove that the overcharge was overwhelmingly, if not entirely, incurred by Consumers.

## D.    The Conflict Will Continue Throughout the Litigation

The pass-through issue presents a conflict of interest between Resellers and Consumers at every stage of the litigation.

### 1.    Pleading.

To state a claim, Plaintiffs must allege injury to their business or property.  As discussed *supra*, there is a current tension between (a) Resellers' interest in pleading that overcharges on broiler chickens harmed purchasers at every stage in the distribution chain, and (b) Consumers' interest in pleading that 100% of the overcharges were passed through

---

[21] *Report and Recommendations of Special Master*, ¶ 16, attached as Exhibit B to Declaration of Daniel E. Gustafson in Support of Motions for Appointment of Gustafson Gluek PLLC and Cotchett, Pitre & McCarthy, LLP as Interim Class Counsel and Wexler Wallace LLP as Liaison Counsel for Indirect Purchaser Plaintiffs ("Special Master Report"), ECF No. 116 at p. 68.

[22] *Id.* at ¶ 24 (emphasis added); s*ee also id.* at ¶ 27.

to end-users and harmed them alone. Here, Indirect Purchaser Counsel filed a single Consolidated Amended Complaint on behalf of both Indirect Resellers and End-User Consumers, without distinguishing the separate impact to either. The failure to specifically allege the impact to either can be fatal under Rule 12(b)(6).[23]

## 2. Discovery.

Consumers have an interest in diligently pursuing discovery of Indirect Resellers' financial records to show that Indirect Resellers passed through the illegal overcharge in the retail price of chickens. Thus, Consumers will propound significant document requests and interrogatories, and will seek depositions of Indirect Purchaser Resellers to obtain evidence necessary to prove the pass-through of overcharges to end users. This discovery will be necessary to prove injury and to demonstrate that pass through of the overcharge can be established on a class-wide basis. On the other hand, Indirect Resellers have an interest in either resisting discovery or demonstrating that the overcharge was not passed through, including through data and depositions.[24] Thus, if Indirect Purchaser Counsel continue to

---

[23] *See*, *e.g.*, *In re Domestic Drywall Antitrust Litig.*, 2016 U.S. Dist. LEXIS 90619, at *17-19 (E.D. Pa. July 13, 2016) (denying motion to dismiss where homebuilders alleged they did not pass through overcharges to home purchasers, but noting that the pass-through defense would "disprove[] the element of antitrust injury."); *Harrison*, 2016 U.S. Dist. LEXIS 77465, at *18-19 (denying motion to dismiss, in part, because counsel dismissed the merchant reseller plaintiffs and only alleged claims on behalf of consumer end users, thus eliminating opposing views on pass-through and apportionment of damages).

[24] *See*, *e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 U.S. Dist. LEXIS 21696, at *47 (N.D. Cal. Feb. 21, 2012) ("Defendants also claim that Dr. Netz's pass-through conclusions are contradicted by anecdotal evidence obtained during discovery. This evidence consists of deposition testimony or declarations by various OEMs and retailers that increases in costs of components or products were not always passed along to customers. *See*, *e.g.*, Chen Decl. at Exs. 3 (Dell), 4 (Best Buy), 5 (Newegg.com), 6 (Target), 7 (Radioshack), 24 (HP). Finally, defendants assert that transaction data obtained from Dell demonstrates that pass through did not always occur."). *See also* Pierre Y. Cremieux, "Assessing Conflict, Impact, and Common Methods of Proof in Intermediate Indirect-Purchaser Class Action Litigation," Economics Committee Newsletter (ABA Spring 2006) at 7 (discussing "significant issues of conflict."),

represent both Resellers and Consumers, they must choose which avenues to pursue more zealously. Class Counsel appointed for both would impermissibly be tasked with taking and defending witnesses from both camps. Indeed, counsel would need to take depositions of their Reseller clients on behalf of their Consumer clients. This is a direct conflict of interest under Rule 1.7. *See* Comment 6 to Rule 1.7 ("[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client … in a lawsuit involving another client … when the testimony will be damaging to the client.")

### 3. Class Certification.

The principal inquiry that will arise at class certification is whether common questions of fact predominate under Rule 23(b)(3) such that a class may be certified. A key point of contention will be whether antitrust impact or fact-of-injury can be established through class-wide proof.[25] Consumers or End Users must demonstrate that there are two-levels of impact capable of proof using class-wide evidence: first, that, as a result of Defendants' anticompetitive activity, all (or virtually all) retailers in the United States were

---

available at http://www.analysisgroup.com/uploadedfiles/content/insights/publishing/indirect-purchaser_aba_article.pdf (last accessed November 25, 2016).

[25] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). *See also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 810 (7th Cir. 2012) ("The central issue under Rule 23(b)(3) became whether plaintiffs could show on a class-wide basis the antitrust impact of Northshore's actions on the proposed class."). Courts have held that common issues do not predominate where fact-of-injury cannot be established by common proof. *See, e.g., In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) ("In antitrust class actions, common issues do not predominate if the fact of antitrust violation and the fact of antitrust impact cannot be established through common proof."); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005) ("[P]roof of conspiracy is not proof of common injury."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008) (citations omitted).

overcharged for their purchases of [the product]; and, second, that all (or virtually all) retailers passed on the overcharge to the Plaintiffs.[26]

Plaintiffs will engage economists to analyze and opine on the extent of antitrust impact and damages.[27] However, Indirect Resellers and Consumers do not have an interest in the same opinions. Indirect Resellers have an interest in demonstrating antitrust impact at their level of the distribution chain, without reference to pass through and consumers. Consumers, on the other hand, have an interest in demonstrating that the overcharge was passed through to them from the Indirect Resellers. Thus, the economists' opinions on whether antitrust impact can be demonstrated on a class-wide basis will focus on different questions and evidence to analyze impact.

### 4. Summary Judgment and Trial.

To prevail on both liability and damages, each subclass must prove that it absorbed the impact of the overcharges. In summary judgment briefing and at trial, class counsel is tasked with presenting evidence showing that Indirect Resellers were harmed or that Consumers were harmed, or that one group suffered more of the harm than the other.[28] The

---

[26] *Hydrogen Peroxide*, 552 F.3d at 311-12 (citing *In re Graphics Processing Units Antitrust Litig.,* 253 F.R.D. 478, 502-04 (N.D. Cal. 2008)).

[27] *See*, *e.g.*, *In re Optical Disk Drive Antitrust Litig.*, 2016 U.S. Dist. LEXIS 15899, at *71 (granting indirect purchaser end users' motion for class certification, based in part on expert's pass-through studies); *Somers v. Apple, Inc.*, 258 F.R.D. 354, 361 (N.D. Cal. 2009) (denying motion for class certification where end users' expert failed to pass through from resellers to end users).

[28] *See*, *e.g.*, *In re Optical Disk*, 2016 U.S. Dist. LEXIS 15899, at *71 (granting indirect purchaser end users' motion for class certificating, stating "While defendants have offered some compelling evidence apparently contradicting the IPPs' contention that cost savings are virtually always passed through, that evidence, as well as defendant's attacks on the completeness and accuracy of Dr. Flamm's pass-through studies, ***present issues to be decided on the merits."*)) (emphasis added).

higher the damages proven for one subclass, the lower the damages will be for the other subclass.

While some courts have glossed over this conflict at the outset of litigation, the trend is to address it at the leadership stage, before any counsel need be disqualified. For example, in *In re Auto. Wire Harness Sys. Antitrust Litig.,* MDL 2311 (E.D. Mich.), the district judge created three separate leadership structures for direct purchasers, and then two types of indirect purchasers: dealers and end users. (Orders attached as Exhibit E.) That structure has been implemented in more than a dozen additional cases concerning the price fixing of auto parts before that Court.  Likewise, in *In re Aluminum Warehousing Antitrust Litig.*, MDL No. 2481 (S.D.N.Y.), and *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, MDL No. 2508 (E.D. Tenn.), the courts appointed separate lead counsel for direct purchasers, commercial end users, and consumer end users. Other courts have followed suit.[29]

## IV.    CONCLUSION

Because of a current conflict of interest regarding the pass-through of overcharges, separate counsel should be appointed for Resellers and Consumers in this case.  Consumer Plaintiffs respectfully move this Court to appoint Hagens Berman and Cohen Milstein as interim co-lead counsel for the proposed Indirect Purchaser Consumer Class.

---

[29] *In re Vehicle Carriers Servs. Antitrust Litig.*, No. 13-cv-3306 (D.N.J. Mar. 3, 2014) (ECF No. 106) (Order Appointing Interim Co-Lead and Liaison Counsel) (appointing separate counsel for "automobile dealer" and "endpayor" classes); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-mdl-01935 (M.D. Pa. Sept. 14, 2008) (ECF No. 387) (appointing separate counsel for "indirect business purchasers" and "indirect end users"); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-md2670 (S.D. Cal. Mar. 24, 2016) (ECF No. 119) (appointing separate counsel for "indirect commercial food preparer" and "indirect end payer" classes).

DATED: November 30, 2016

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*                           `
    Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com

Elizabeth A. Fegan
Jeannie Y. Evans
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
E-mail: beth@hbsslaw.com
E-mail: jeannie@hbsslaw.com

Jeff D. Friedman
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
E-mail: Jefff@hbsslaw.com

*Attorneys for Plaintiffs Daniel M. Percy, Gloria J.*
*Lathen, Jonas Dimas, Dorothy Monahan, Frank*
*Coe, Lester Patterson, Pamela Tierney, Linda*
*Cheslow, and Natalie Wilbur, Case Nos. 16-cv-*
*08931 and 16-cv-09490*

COHEN MILSTEIN SELLERS & TOLL, PLLC

By: */s/ Kit A. Pierson*
    Kit A. Pierson
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
kpierson@cohenmilstein.com
Brent W. Johnson
Richard A. Koffman
Emmy L. Levens
Robert W. Cobbs
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
bjohnson@cohenmilstein.com
rkoffman@cohenmilstein.com
elevens@cohenmilstein.com
rcobbs@cohenmilstein.com

Carol V. Gilden
Daniel H. Silverman
COHEN MILSTEIN SELLERS & TOLL, PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
cgilden@cohenmilstein.com
dsilverman@cohenmilstein.com

*Attorneys for Plaintiffs Christopher Gilbert, Alison
Pauk, Marilyn Strangeland, Leslie Weidner and
David Weidner, Case No. 16-9007*

J. Barton Goplerud
HUDSON, MALLANEY, SHINDLER &
ANDERSON, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
E-mail: jbgoplerud@hudsonlaw.net

David Freydin
Timothy A. Scott
FREYDIN LAW FIRM
8707 Skokie Blvd # 305
Skokie, IL 60077
E-mail:  David.freydin@freydinlaw.com
E-mail:  Timothy.scott@freydinlaw.com

*Additional Attorneys for Plaintiffs Daniel M. Percy, Gloria J. Lathen, Jonas Dimas, Dorothy Monahan, Frank Coe, Lester Patterson, Pamela Tierney, Linda Cheslow, and Natalie Wilbur, Case Nos. 16-cv-08931 and 16-cv-09490*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2016, a copy of the foregoing was filed electronically via the ECF system.  Notice of this filing will be sent to the attorneys of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Steve W. Berman*
Steve W. Berman
